# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JOSEPH ALVIN ROYSTER,

        Petitioner,      :     Case No. 3:16-cv-059

  - vs -                     District Judge Walter Herbert Rice
                              Magistrate Judge Michael R. Merz

CHARLOTTE JENKINS, Warden,
 Correctional Institution,

                              :

        Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits, upon the Petition (ECF No. 1), the Return of Writ (ECF No. 15), and Petitioner's traverse (filed under the title "Motion for Federal Relief" and referred to hereinafter as "Traverse" (ECF No. 18)).

Mr. Royster pleads the following grounds for relief:

> **Ground One:** Evidence was Insufficient to Support Conviction
>
> **Supporting Facts:** Court of Appeals decision was contrary to *Jackson v. Virginia*, 443 U.S. 307 (1979) as the State failed to prove the element of Corporal Punishment. State failed to provide the jury with facts and circumstances for the jury to determine whether Petitioner created a substantial risk of physical harm pursuant to [Ohio Revised Code §] 2919.22(B)(3).
>
> **Ground Two:** Ineffective Assistance of Counsel.
>
> **Supporting Facts:** Counsel failed to investigate at the pre-trial stages. Counsel's investigation would have lead [sic] him to uncover facts that Petitioner had an alibi for part of the time frame within the indictment. Counsel's negligence caused counsel not to present facts that were excalpatory [sic] to Petitioner's defence [sic].

1

> **Ground Three:** Ineffective Assistance of Appellate Counsel
>
> **Supporting Facts:** Counsel failed to object to testimony that was inflammatory and unfairly prejudicial to Petitioner. Said testimony played on the jury's emotions and gave the jury an instinct to punish.

(Petition, ECF No. 1, PageID 9-12.)

**Procedural History**

Royster was indicted by the Montgomery County grand jury on three counts of rape of a child under ten years of age and one count of child endangering in violation of Ohio Revised Code § 2919.22(B)(3). One count of rape was dismissed on a motion for judgment of acquittal, but the jury convicted Royster on the other three counts and he was sentence to fifteen years to life on the rape counts and thirty-six months on the child endangering count all to be served concurrently. Royster appealed and the conviction was affirmed. *State v. Royster*, 2015-Ohio-3608, 2015 Ohio App. LEXIS 3544 (2nd Dist. Sept. 4, 2015), appellate jurisdiction declined, 144 Ohio St. 3d 1429 (2015).

On March 3, 2014, Royster filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. The trial court denied relief and that decision was affirmed on appeal. *State v. Royster*, 2015-Ohio-625, 2015 Ohio App. LEXIS 598 (2nd Dist. Feb. 20, 2015), appellate jurisdiction declined, 142 Ohio St. 3d 1478 (2015).

On September 17, 2015, Royster filed an application to reopen his direct appeal to raise a claim of ineffective assistance of appellate counsel, but the Second District denied the application. *State v. Royster*, Case No. C.A. 25870 (2nd Dist. Nov. 6, 2015)(unreported; copy at State Court Record, ECF No. 14, PageID 359), appellate jurisdiction declined, *State v. Royster*,

144 Ohio St. 3d 1462 (2016). Royster then filed the instant habeas corpus action on February 18, 2016.

# Analysis

**Ground One: Insufficient Evidence**

In his First Ground for Relief, Royster challenges for lack of evidence his conviction for child endangering. The Warden defends this Ground for Relief on the merits (Return of Writ, ECF No. 15, PageID 1028-32).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship,* 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which

determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

4

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(per curiam).

The Second District Court of Appeals decided Royster's sufficiency of the evidence claim as follows:

> **[*P28]** R.C. 2919.22 provides:
>
> * * *
>
> (B) No person shall do any of the following to a child under eighteen years of age * * *
>
> * * *
>
> (3) Administer corporal punishment * * * which punishment * * * is excessive under the circumstances and creates a substantial risk of serious physical harm to the child.
>
> **[*P29]** Pursuant to R.C. 2901.01(A)(5), and as the jury was instructed, serious physical harm to persons means in relevant part: (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> * * *
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious

5

disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**[\*P30]** Having reviewed the evidence in a light most favorable to the State, we conclude that a rational finder of fact could have found the essential elements of endangering children proven beyond a reasonable doubt. J.J. testified on direct and cross that if she got into trouble, Royster would discipline her by means of a belt, and that the belt and buckle left welts on her legs and buttocks. J.J. went to live with J.B. in April of 2011, and at the time of Vavul-Roediger's physical examination of J.J. one year later, in April, 2012, according to the doctor, visible scarring on her left knee and right thigh were present. Vavul-Roediger testified that J.J. told her that the scar on her knee was caused by a fall, but when asked about the scarring on her right thigh, J.J. was reluctant to respond. Only after Vavul-Roediger asked her if someone had harmed her did J.J. disclose that Royster beat her with a belt and buckle. The jury was free to attribute J.J.'s initial reluctance to incriminate Royster both to her overwhelming fear of him and her concern that others would learn what he did to her. This conclusion is supported by Vavul-Roediger's testimony that J.J. spontaneously told her that she did not like to wear dresses because doing so exposed the scars on her legs. Further, based upon her training and experience, Vavul-Roediger expressed concern that the scars on J.J.'s thigh "may not be accidental in nature based on their characteristics, their pattern, their placement on her leg." According to Vavul-Roediger, the scarring "did not seem to be a typical location for a type of injury that would typically result from routine activity in an active child." While she could not definitively state that the scarring was caused by a belt and buckle, Vavul-Roediger testified that the marks could be consistent with being beaten by a belt, and that being beaten with a belt could cause scarring, or, in other words, serious physical harm.

**[\*P31]** Finally, we conclude that Royster's reliance upon *Bowman* and *Rosa* is misplaced for the proposition that in the absence of evidence regarding the totality of the circumstances surrounding Royster's endangering children offense, Royster was entitled to an acquittal. We note that the *Rosa* Court noted "the unique nature of the parent/child relationship, including the parent's right to discipline their child, including the use of corporal punishment," and as the State asserts, the matter herein is not a

> parental discipline case. *Id.*, ¶ 21. If the jury believed J.J.'s testimony that Royster beat her with a belt and buckle to such an extent that welts remained visible on her skin, and credited Vavul-Roediger's testimony regarding the nature and pattern of the scarring as inconsistent with a typical childhood injury, the jury could have found the essential elements of R.C. 2919.22(B)(3) proven beyond a reasonable doubt.

*State v. Royster (direct appeal), supra.*

Royster argues the Second District's decision is "contrary to *Jackson v. Virginia*, 443 U.S. 307 (1979)." (ECF No. 18, PageID 1041.) In fact, the Second District employed the correct *Jackson* standard as embodied in *State v. Thompkins*, 78 Ohio St. 3d 380 (1997). Under 28 U.S.C. § 2254(d)(1), a habeas court can grant relief on a constitutional claim decided by the state courts only if the decision is either contrary to or an objectively unreasonable application of the relevant United State Supreme Court case law. Since the Second District employed the *Jackson* standard, its decision was not "contrary" to *Jackson*, i.e., dependent on a contrary standard of law. Under the liberal construction canon of *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), the Court will read Royster's papers as raising an "unreasonable application" claim.

In deciding that question, this Court must determine if there was sufficient evidence on each element of the offense. Royster seems to be arguing that without proving to the jury the facts and circumstances under which his discipline of J.J. occurred, the State has not proven its case. Without the facts and circumstances, he asserts, the jury could not "properly decide if Petitioner created a substantial risk of serious physical harm." (Traverse, ECF No. 18, PageID 1042.)

First of all, Royster asserts the Second District got the facts wrong. He alleges that it found that J.J. had testified directly about being struck by Royster with both a belt and a belt buckle. At the places cited in the trial transcript by Royster, J.J. said Royster hit her with a belt

7

(ECF No. 14-1, PageID 640, 659).  On neither direct nor cross did she either include or exclude being hit with the buckle part of the belt.  Even though J.J. testified that the welts Royster had raised with the belt were not permanent, the State's expert witness testified to finding scars on the right leg consistent with a severe beating (i.e., severe enough to leave permanent scarring).  J.J.'s stated reluctance to wear dresses because of the scarring corroborates that testimony.  Although J.J. did not mention the buckle in her testimony, she had mentioned it to the expert witness who repeated it for the jury.

Royster seems more concerned with the failure to the State to prove the circumstances of each beating.

> Petitioner asserts, that there were no details of where or when the incident occurred [sic], no discussion of whether non-corporal punishment methods had failed in the past, no evidence of what occurred [sic] afterwards, and no pictures of the scars were presented to the jury. As stated to the State Court of Appeals, the jury had no circumstances to consider when assessing the charge of Corporal Punishment.

(Traverse, ECF No. 18, PageID 1042.)  As Judge Donovan noted for the court of appeals, the cases on which Royster relied for the idea that the State had to present the totality of the circumstances regarding corporal discipline were all cases involving discipline by parents and Royster is not J.J.'s parent.  There was expert testimony that the beatings had left permanent scars, certainly sufficient to ground a finding that the discipline had been excessive.  The jury was free to conclude that discipline of this severity by a mother's boyfriend was excessive.

8

Petitioner refers this Court to two cases, *State v. Thompson*, 2006-Ohio-582, 2006 Ohio App. LEXIS 533 (2nd Dist. Feb. 10, 2006), and *State v. Ivey*, 98 Ohio App. 3d 249 (8th Dist. 1994).

In *Thompson* a man was convicted of domestic violence for striking his stepdaughter once on the hand with a metal object, "which hurt and caused a bruise." Judge Grady emphasized the rights of parents, embodied in an affirmative defense to possible domestic violence charges, to physically discipline their children. But Royster is not J.J.'s parent and Judge Donovan marked the distinction in her decision. The Second District affirmed the conviction in *Thompson*.

In *State v. Ivey*, the Eighth District reversed a child endangerment conviction, concluding that the corporal punishment inflicted by a father on his ten-year-old son was not sufficient for conviction, noting that "mere use of a belt for corporal punishment was not per se abusive [and] bruising alone is insufficient to establish abuse." An Eighth District decision is not binding in the Second District, *Ivey* involved discipline by a parent, and scarring is more than mere bruising.

The Magistrate Judge concludes the Second District's decision was not an objectively unreasonable application of *Jackson*. Royster's First Ground for Relief should be dismissed on the merits.

**Ground Two:  Ineffective Assistance of Counsel**

9

In his Second Ground for Relief, Royster asserts he received ineffective assistance of trial counsel when his trial lawyer failed to investigate his alibi defense.  Royster presented this claim in his post-conviction petition.  On appeal the Second District decided it as follows:

> *Failure to Investigate Alibi*
>
> **[*P36]**  Next, Royster claims his counsel was ineffective in failing to investigate his alibi that he was residing at the Carpenter Shelter in Virginia during the time frame that the rape offenses allegedly occurred. In support of the alibi argument, Royster submitted documentation from the shelter indicating that he was residing there between  July 16, 2010 and October 12, 2010. Royster states in his affidavit that he had a discussion with his counsel regarding the dates of the alleged offenses and his alibi. He also averred that he provided his counsel with other supporting documentation, but that counsel did not want to use it.
>
> **[*P37]**  Even if we were to assume counsel's performance was deficient with respect to investigating Royster's alibi, Royster has failed to establish that any further investigation would have changed the outcome of his case. As previously noted, he was indicted for committing the rape offenses sometime between August 1, 2010 and April 30, 2011. While he established an alibi between July 16, 2010 and October 12, 2010, there is still a six month window of time in which the offenses could have occurred as alleged. There was also testimony presented at trial indicating that the offenses were committed within the alleged time frame. As the trial court indicated, Royster is not alleging that he was at the homeless shelter during the entire period between August 1, 2010 and April 30, 2011. Therefore, we agree with the trial court's finding that the homeless shelter evidence is immaterial to the outcome.
>
> **[*P38]**  For the foregoing reasons, Royster's claim that his trial counsel was ineffective in failing to investigate his alibi has no merit.

*State v. Royster (post-conviction appeal), supra.*

Royster argues this decision is an unreasonable application of the governing Supreme

Court standard for ineffective assistance of trial counsel, *Strickland v. Washington,* 466 U.S. 668 (1984)(Traverse, ECF No. 18, PageID 1044). First of all, he contests the Second District's reliance on an outcome-determinative test for prejudice, arguing that *Lockhart v. Fretwell,* 506 U.S. 364 (1993), requires a determination of whether the trial was fundamentally unfair or the outcome is unreliable (Traverse, ECF No. 18, PageID 1045).

*Lockhart* involved an explication of *Strickland*, rather than any modification. The Court held:

> The test formulated in *Strickland* for determining whether counsel has rendered constitutionally ineffective assistance reflects this concern. In *Strickland*, we identified the two components to any ineffective-assistance claim: (1) deficient performance and (2) prejudice. Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; see also *Kimmelman* v. *Morrison*, 477 U.S. 365, 374, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *Nix* v. *Whiteside, supra*, at 175. Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him. *See Cronic, supra*, at 658.

*Lockhart*, 506 U.S. at 369-70 (footnotes omitted). As the Court explained in discussing *Nix v. Whiteside*, impact on outcome was not enough unless it rendered the trial unfair or unreliable. The Supreme Court has expressly held that *Lockhart* did not modify the *Strickland* standard. *(Terry) Williams v. Taylor,* 529 U.S. 362, 391-98 (2000). In *Lockhart* the Court reinstated a death sentence vacated by the lower courts. The *Strickland* prejudice test, as explicated in *Lockhart*, is stricter than mere outcome impact. If a habeas petitioner cannot satisfy the outcome

11

determinative test, *a fortiori* (at least per *Lockhart*) he cannot satisfy the unfair or unreliable trial test.

To show that the outcome of his trial would have been different or that the trial was rendered fundamentally unfair by his lawyer's mistakes, Royster relies heavily on *State v. Sellards*, 17 Ohio St. 3d 169 (1985).  In *Sellards* the Ohio court of appeals had vacated a conviction for sexual misconduct of various sorts on various dates on grounds the indictment was not specific enough about times and dates.  The Ohio Supreme Court found the indictment specific enough because more specificity can be obtained with a bill of particulars, if the State has the specific times and dates.

Royster asserts "[t]he court of appeals failed to look into whether the alibi affidavits, <u>if presented by counsel</u>, would have compelled the prosecution to produce a specific date pursuant to *State v. Sellards*." (Traverse, ECF No. 18, PageID 1045.)  Judge O'Connell at the Common Pleas Court level found the evidence from Mary Parker Lamb that Royster was in a homeless shelter on July 27, 2010, was irrelevant because the indictment did not charge an offense on that date (Decision, State Court Record, ECF No. 14, PageID 219).  He also concluded that argument was precluded by Ohio's criminal *res judicata* doctrine because it was available on direct appeal and not presented there.  *Id.*  Respecting proposed witness Henry Alexander Ward, Judge O'Connell found Royster had presented no affidavit from Ward.  *Id.*

Royster misunderstands *Sellards*.  It does not require the State to produce in a bill of particulars more exact time, place, and date allegations than the State has knowledge of.

Judge O'Connell's decision as affirmed by the Second District is not an unreasonable application of *Strickland* or *Lockhart*.  Ohio's criminal *res judicata* doctrine is an adequate and independent state ground of decision which bars merits habeas consideration of claims thus

12

barred in the Ohio courts. *State v. Perry,* 10 Ohio St. 2d 175 (1967), which enunciated the doctrine, is an adequate and independent state ground. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

In a substantial portion of his Traverse, Royster argues his trial counsel was ineffective in another way, to wit, by not investigating additional ways of impeaching the victim's credibility (Traverse, ECF No. 18, PageID 1047-49). This claim was not presented to the Second District on appeal from denial of the post-conviction petition and is also not made in the Petition in this Court. New claims cannot be raised for the first time in a traverse. And the claim is also barred by Royster's procedural default in failing to present it to the state courts.

Ground Two for Relief is without merit.

**Ground Three: Ineffective Assistance of Appellate Counsel**

In his Third Ground for Relief, Royster asserts he received ineffective assistance of appellate counsel. Although the Petition states this as a claim about the ineffective assistance of trial counsel, the Court, under *Haines v. Kerner, supra*, reads it as a claim that appellate counsel was ineffective for failing to raise the underlying ineffectiveness of trial counsel in eliciting certain testimony.

The Second District described and rejected this claim in deciding Royster's Application for Reopening his direct appeal, which is the proper place under Ohio law for raising claims of

ineffective assistance of appellate counsel.

> At trial, Terry Stevenson, a "registered play therapist" at the Mental Health Clinic in Troy, testified that she began treating J.J. in August of 2012. On cross-examination, Stevenson testified that in January of 2013, J.J. disclosed an incident of sexual abuse involving two boys who were 11 and 12 years old, in the course of which one of the 2 boys inserted his penis into J.J.'s anus. J.J. subsequently testified regarding the encounter with the boys and she further testified that a fourteen year old boy tried to force her to perform oral sex in a separate incident but that she refused. J.J. testified that Royster learned of the incident with the older boys and advised her that her private parts were "his not the other boys."
>
> There was evidence adduced at trial that J.J.'s sexual knowledge was beyond her tender years, and appellant counsel may have concluded that it was a matter of reasonable trial strategy for defense counsel to elicit evidence regarding the incidents of abuse involving the young boys as an alternative source of J.J.'s sexual knowledge since Royster denied abusing J.J. Royster merely speculates regarding the jury's "instinct to punish" him based upon the incidents involving the young boys. While Roster asserts that the jury convicted him on an improper basis the incidents of abuse with the young boys involved oral and anal sex and Royster was convicted of digital and vaginal rape. This Court concluded that his convictions for rape were not against the manifest weight of the evidence.

(Decision, State Court Record, ECF No. 14, PageID 364.)

Royster correctly notes that the governing standard for this claim is *Strickland v. Washington*, *supra*, as applied to appellate counsel. A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308, 317

14

(6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.*

The appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); *see Smith v. Murray*, 477 U.S. 527 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua,* 341 F.3d at 441 ; *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999). Counsel can be ineffective by failing to raise a "dead-bang winner," defined as an issue which is obvious from the trial record and which would have resulted in a reversal on appeal, even if counsel raised other strong but unsuccessful claims. *Mapes, supra, citing Banks v. Reynolds*, 54 F.3d 1508, 1515 n. 13 (10th Cir. 1995); *see also Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those

15

errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), *citing Strickland, supra,* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir, 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

The Second District's decision denying this claim is properly read as holding that the underlying claim of ineffective assistance of trial counsel was not compelling. The reasons given – that the testimony offered an explanation of J.J's sexual precociousness apart from the allegations of abuse by Royster – is persuasive. At the very least, it cannot be said that raising such a claim on appeal would have been a "dead-bang winner."

In what he admits is an expansion of his argument, Royster claims his trial attorney provided ineffective assistance when he did not object to the prosecutor's violation of an order in limine regarding this other sexual conduct (Traverse, ECF No. 18, PageID 1051). That claim is procedurally defaulted because it could have been raised on direct appeal but was not. Royster had a remedy for that failure if he could show it was ineffective assistance of appellate counsel to fail to raise that claim, but he did not do so in his Rule 26(B) application.

Petitioner's Third Ground for Relief is without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be DISMISSED WITH PREJUDICE.  Because reasonable jurists would not disagree with this conclusion as to Grounds Two and Three, Petitioner should be denied a certificate of appealability on those grounds.  Ground One is sufficiently novel in the questions it presents to be debatable among reasonable jurists and Petitioner should be granted a certificate of appealability on that ground if requested.

July 14, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).